IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT STEVEN ELLIOTT[1] II,

    Petitioner,

v.                                                                                          1:20-CV-00567-DHU-LF
                                                                                                                     2:16-CR-00198-DHU-LF-1

UNITED STATES OF AMERICA,

    Respondent.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on petitioner Robert Steven Elliott's pro se Motion to Vacate under 28 U.S.C. § 2255, filed on June 10, 2020. Doc. 1. On September 14, 2020, Mr. Elliott filed an amended habeas petition under 28 U.S.C. § 2255. Docs. 5, 6. Respondent filed a response on October 28, 2022. Doc 24. Despite an extension, Mr. Elliott did not file a reply.[2] *See* Doc. 30. The Honorable District Judge David H. Urias referred this case to

---

[1] Mr. Elliott consistently spells his own name with one "t," *see, e.g.,* Docs. 1, 6, but both the civil and criminal docket and all the charging documents in the criminal case show his name spelled with two "t's." To be consistent with the docket, this PF&RD will use two "t's," but I suspect that this is an incorrect spelling.

[2] On December 12, 2022, Mr. Elliott requested a 90-day extension, which the Court construed as a request for a 90-day extension to file a reply to the government's response. *See* Docs. 29, 30. The Court granted Mr. Elliott's request for an extension and gave him until March 6, 2023, to file a reply. Doc. 30. He did not do so. On May 1, 2023, Mr. Elliott filed a notice of change of address and a notice of extension, saying that he was "now back in Prison. USP Tucson." Doc. 31. He stated he "last wrote and ask[ed] for another 90 day extension," but he had "not gotten the verdi[c]t yet," and to please send all his mail to USP Tucson, and to "resend my lost filed prociding [sic] to me." Doc. 31. To the extent that Mr. Elliott is asking for another 90-day extension, the Court denies that request because it is untimely, and there is no indication on the docket that the Court's order granting the original 90-day extension was not delivered to Mr. Elliott. No mail has been returned as undeliverable. Further, Mr. Elliott never filed any notice of change of address informing the Court that he was not in Arizona, and that his mail should be

me to pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 17. Having reviewed the submissions of the parties and the relevant law, I recommend that the Court correct Mr. Elliott's sentence to reflect a sentence of 270 months on each count to be served consecutively, and dismiss his other two claims.

I.   **Background Facts and Procedural Posture**

On October 30, 2015, agents with the Department of Homeland Security learned that Mr. Elliott had been sending sexually explicit photos and videos of a female minor, his niece, from his cellphone, and had uploaded these photos and videos to online accounts accessible to others. CR Doc. 32 ¶¶ 14–15, 21.[3] Several photos depicted an adult penis identifiable as Mr. Elliott's because of a recognizable scar. *Id.* ¶¶ 15, 18–19. A search warrant was issued and executed, and the same day, Mr. Elliott was arrested. *Id.* ¶ 17. Federal agents found three children, Mr. Elliott's niece and two nephews, at his residence along with additional child pornography, including images from known series[4] on his phone and laptop. *Id.* ¶¶ 17, 20–21.

Attorney André Poissant with the Federal Public Defender's office, who previously had represented Mr. Elliott, was appointed to represent him. CR Doc. 4. On January 20, 2016, a

---

sent elsewhere. Mr. Elliott has a continuing duty to keep the Court informed of his current address at all times. D.N.M.LR-Civ.83.6.

[3] Citations to "CR Doc." refer to the document number in the criminal case, Case No. 2:16-CR-00198-DHU-LF.

[4] The National Center for Missing and Exploited Children tracks images and videos of child pornography where the victim has been identified. *See United States v. Reddick*, 900 F.3d 636, 637-38 (5th Cir. 2018); *United States v. Woods*, 684 F.3d 1045, 1052 (11th Cir. 2012). Any victim who has been identified in child pornography discovered in the United States is given a "series" name to protect that victim's identity and to track the dissemination of those pictures and images for restitution and other purposes. *Woods*, 684 F.3d at 1051 n.3.

federal grand jury returned a six-count indictment against Mr. Elliott. CR Doc. 11. Each count charged him with production of a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2256. *Id*. On March 22, 2016, Mr. Elliott pled guilty pursuant to an 11(c)(1)(C) plea agreement. CR Docs. 22, 23. In exchange for his guilty plea on two counts, waiver of his rights to appeal and collaterally attack his convictions and sentence, and his agreement to pay substantial restitution to any identified victim who requested it, the government agreed to dismiss four counts, and also agreed to a binding sentencing range of 20 to 45 years.[5] CR. Doc 22. On June 24, 2019, Mr. Elliott was sentenced to 540 months in prison as to *each* count of the indictment, to run concurrently. CR Docs. 38, 39. On July 24, 2019, the United States informed the court that representatives from the known series in the case had agreed to forgo restitution so that Mr. Elliott's niece could receive all the restitution. CR Doc. 44. As previously agreed by Mr. Elliot, the Court ordered restitution in the amount of $210,012.00. CR Doc. 45.

    The Court entered its judgment on June 24, 2019, and an amended judgment showing the dismissed counts the next day. CR Docs. 39, 41. The Court entered a second amended judgment "to address pending Restitution" on September 19, 2019. CR Doc. 45. On June 9, 2020, Mr. Elliott filed a document entitled "Motion to Toll or Enlarge Time Under AEDPA to File § 2255 Petition," which the Court construed as a Motion to Vacate under 28 U.S.C. § 2255, but it gave Mr. Elliott 90 days to amend his original motion. *See* Docs. 1, 2. Taking advantage of the prison mailbox rule, Mr. Elliott timely filed his First Amended Motion to Vacate under 28 U.S.C. § 2255 on September 14, 2020. *See* Docs. 5, 6, 7.

---

[5] On March 26, 2019, Mr. Elliott entered into an amended plea agreement, which differed from the original only in that it contained the elements of the charged offense. *See* CR Docs. 22, 30, 31.

## II. Mr. Elliott's Claims

Mr. Elliott raises three claims in his petition:

1. "Mr. Elliot is currently subject to a sentence that exceeds the statutory maximum of the charged conduct to which he pleaded guilty & also violates the terms of the plea agreement." Doc. 6 at 7–8.

2. "The restitution amount . . . imposed in this matter was entered as a consequence of [ineffective assistance of counsel] and prosecutorial misconduct. The failures of [trial counsel], and the misconduct of [prosecutors], violated Mr. Elliott's Sixth Amendment right to effective representation and Fifth Amendment right to due process." *Id.* at 13.

3. "Mr. Elliot is serving a 45 year term of imprisonment imposed pursuant to the plea agreement for alleged crimes the girl identified as the victim, C1, told investigators he did not commit. . . . Prior to advising pleading guilty as the only manner of resolution, no investigation into the circumstances [of the case] was conducted. Whether it was laziness, presumption of guilt, or otherwise, that lackluster assistance is [ineffective assistance of counsel]; this was not a sound, reasonable strategy." *Id.* at 26.

I find no merit in the latter two claims. However, Mr. Elliott's first claim is facially meritorious.

## III. Standard of Review

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28

4

U.S.C. § 2255(b). The standard applied to § 2255 motions is stringent: only violations of federal law that "constitute[] a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure" justify relief. *United States v. Gordon*, 172 F.3d 753, 755 (10th Cir. 1999) (internal quotation marks and brackets and citation omitted). The Court presumes the proceedings which led to a defendant's conviction were correct. *Parke v. Raley*, 506 U.S. 20, 29–30 (1992).

The Sixth Amendment of the U.S. Constitution guarantees the right to effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). For Mr. Elliott to succeed on his claims of ineffective assistance, he must demonstrate both that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id.* at 687–88. To show that counsel's representation was objectively unreasonable, Mr. Elliott must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. This is a heavy burden: "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011), and was "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies," *Harrington v. Richter*, 562 U.S. 86, 107 (2011).

To show prejudice, Mr. Elliott must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. A court "may address the performance and prejudice components in

5

any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).

**IV. Analysis**

**A. Mr. Elliott's sentence is not authorized by law.**

Mr. Elliott pled guilty to two violations of 18 U.S.C. § 2251, each of which carries a maximum statutory sentence of 30 years for offenders with no prior convictions related to child sexual abuse.[6] *See id.* § 2251(e). However, he was sentenced to 540 months, or 45 years, on *each* count, to run concurrently. CR Doc. 45 at 3.[7] This plainly is "not authorized by law," 28 U.S.C. § 2255(b), and though Mr. Elliott waived his rights to collateral review as part of his plea agreement, *see* CR Doc. 30, " a waiver may not be used to preclude . . . review of a sentence that exceeds the statutory maximum." *United States v. Cockerham*, 237 F.3d 1179, 1182 (10th Cir. 2001) (citation omitted).

The United States does not dispute that Mr. Elliott has a right to seek review of an illegal sentence, but argues that, because "the Sentencing Guidelines specifically instruct district courts to stack sentences where the sentence determined within the guideline range exceeds the statutory maximum on a single count of conviction . . . [t]he court's imposition of a 540-month sentence for both counts, running consecutively, is entirely proper . . . ." Doc. 24 at 18 (citing U.S.S.G. § 5G1.2(d)). Although I agree that the Court correctly could impose a total sentence of 540 months by having the sentences run consecutively, the Court is not permitted to impose a sentence that is greater than the statutory maximum sentence on any one count. *See United States*

---

[6] Though Mr. Elliott has an extensive and varied criminal history, detailed in the presentence report, none of his prior convictions concern child sexual abuse. *See* CR Doc. 32 at 12–16.

[7] Though the judgment in this case was twice amended, this sentence is consistent through each relevant document. *See* CR Docs. 38, 39, 41.

*v. Sallis*, 288 F. App'x 457, 464 (10th Cir. 2008) (unpublished) (district judge plainly erred in sentencing defendant to 30 years on one count that carried a 20-year maximum sentence); *United States v. Pacheco*, 237 F. App'x 367, 369 (10th Cir. 2007) (unpublished) (district judge plainly erred in sentencing defendant above the maximum statutory sentence on a supervised release violation); *see also United States v. Penson*, 526 F.3d 331, 335–36 (6th Cir. 2008) (district judge erred in imposing 310-month sentence for each of three counts of bank robbery, to run concurrently, because maximum statutory penalties for counts of conviction were 20 to 25 years). I therefore recommend that the court correct Mr. Elliott's sentence as he requests to reflect a sentence of 270 months on each count, to run consecutively.

**B. Mr. Elliott's second argument states a claim that is not cognizable under § 2255.**

Mr. Elliott argues that "[t]he restitution amount . . . imposed in this matter was entered as a consequence of [ineffective assistance of counsel] and prosecutorial misconduct," and therefore requests that the Court "vacate the current restitution . . . ." Doc. 6 at 13, 25. Under 28 U.S.C. § 2255:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). The Tenth Circuit has held that a prisoner cannot challenge an award of restitution by way of a § 2255 motion because the prisoner is not "claiming the right to be released" based on the challenge to the restitution award. *United States v. Satterfield*, 218 F. App'x 794, 795–96 (10th Cir. 2007) (unpublished) (citing *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir.2003)); *see also United States v. Papa*, 97 F. App'x 848, 851 (10th Cir. 2004) (unpublished). Because Mr. Elliott here does not "claim[] the right to be released" based on the

7

Court's restitution award, he does not state a cognizable claim under § 2255.[8] The Court should dismiss this claim for lack of subject matter jurisdiction. *See Satterfield*, 218 F. App'x at 796 (affirming the district court's dismissal of restitution claim under § 2255 for lack of subject matter jurisdiction).

### C. There is no merit to the claim that Mr. Elliott's counsel provided ineffective assistance by advising him to plead guilty.

Mr. Elliott argues that his counsel advised him to plead guilty "without investigating the facts and evidence," advice which "got Mr. Elliott an unmitigated 45 years in prison." Doc. 6 at 26–27. Mr. Elliott complains that his counsel did not investigate the integrity of the photos found on Mr. Elliott's cellphone, which might have been altered while "third parties had access to his phone," and that he was unaware that his niece denied that she was sexually exploited by Mr. Elliott. *See id.* at 26–29. Mr. Elliott argues that, had he known these facts about the case, "it would [have] been very rational to [resist] pleading guilty and [to examine] other courses of action available to him at that time . . . ." *Id.* at 29–30. In his "unsworn declaration," Mr. Elliott suggests that the evidence against him may have been altered, that one victim had denied that he took pictures of her, and that "evidence demonstrating 'reasonable doubt' and actual innocence exists and has not been thoroughly presented to this court, or even examined by defense counsel." *See* Doc. 8 at 3–4. Mr. Elliott's former attorney, on the other hand, states that Mr. "Elliott never made any claim of innocence. We always anticipated that we would work out the case and enter into a plea deal . . . . He admitted he was the individual pictured in the photos." Doc. 14-4 at 1.

---

[8] Because he does not claim the right to be released—nor allege facts that would support the exercise of that right—it does not matter that Mr. Elliott alleges ineffective assistance of counsel. *See United States v. Roibal-Bradley*, 428 F. Supp. 3d 635, 643 (D.N.M. 2019).

First, Mr. Elliott cannot show that his attorney's failure to conduct further investigation and that his advice that he should plead guilty constitutes deficient performance. Mr. Elliott has not presented any evidence that further investigation or examination of the evidence would have uncovered any information that would have demonstrated his innocence or even raised a reasonable doubt as to his guilt. The presentence report outlines the extensive evidence against Mr. Elliott. CR Doc. 32 ¶¶ 14–21. Further, at his first change of plea hearing, Mr. Elliott admitted under penalty of perjury that on November 23, 2014, he used a female child—his niece—to produce a visual depiction of sexually explicit conduct. Doc. 24-1 at 28. He testified that he knew the child was under age twelve, that the image he took showed the child reclining on the couch with her shirt pulled up, that the image showed Mr. Elliott's hand pulling the child's underwear down to expose her naked vaginal area, and that the focal point of the image was the child's vaginal area. *Id.* He also testified about the logistics of uploading and storing the image. *Id.* at 29. He further testified that on September 28, 2015, he used a child under the age of twelve to make another visual depiction of sexually explicit conduct, that the image depicted the child in the kitchen lifting her skirt and exposing her naked vagina, and that the focal point of the image was the child's vagina. *Id.* at 29–30. He also testified that he stored the image on his family's laptop computer. *Id.* at 30–31. He specifically admitted to the same facts under penalty of perjury in both his original plea agreement and his amended plea agreement. *See* CR Doc. 22 at 4–5; CR Doc. 30 at 4–5. In short, there is nothing to support Mr. Elliott's claim that his attorney's performance was deficient because he failed to further investigate the facts of his case or his potential innocence.

Second, Mr. Elliott cannot show that any purported deficiency in his counsel's performance prejudiced him. "A defendant challenging his guilty plea based on ineffective

9

assistance of counsel must show 'prejudice' by establishing that 'there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.'" *Heard v. Addison*, 728 F.3d 1170, 1183 (10th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In the Tenth Circuit, courts first ask "whether going to trial would have been objectively 'rational under the circumstances'"; only after the petitioner clears this hurdle will the court determine whether it was reasonably probable that the petitioner would have proceeded to trial. *Id.* at 1184 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). Proceeding to trial would not have been objectively rational under the circumstances of this case. Mr. Elliot's third claim is without merit.

Here, Mr. Elliott "ignores the benefits he received from the plea bargain" and substantially mischaracterizes the circumstances and evidence as they stood when he pled guilty. *United States v. Collins*, 96 F. Supp. 3d 1253, 1256 (W.D. Okla.). Mr. Elliott stood charged with six counts, each of which carried a 15 to 30-year sentence, and, based on the sentencing guidelines, faced a recommended sentence of 60 years based *only* on the two counts on which he pled guilty.[9] CR Doc. 32 at 3, 28. Compelling photographic evidence from Mr. Elliott's cellphone and online accounts, including sexually explicit photos that were identifiably taken in his house and at least one that depicted his penis next to the face of his niece, linked him to the production and distribution of child pornography. *Id.* at 4–7. Given the strength of the evidence

---

[9] Respondent points out that Mr. Elliott's brother was, as Mr. Elliott's criminal case proceeded, sentenced to 170 years on very similar counts. Doc. 24 at 27; *see also* Doc. 24-4 at 2 ("We discussed this risk extensively after his brother was sentenced"). Although his brother was sentenced on July 2, 2018, before Mr. Elliott entered into his amended plea agreement, this occurred well after Mr. Elliott entered into the substantively identical original plea agreement on March 2, 2016. Doc. 24 at 3, 27. Thus, it is not clear that his brother's sentence motivated Mr. Elliott to plead guilty, but his brother's sentence certainly shows the potential risk had Mr. Elliott decided not to accept the plea offer that was made to him.

and the length of Mr. Elliott's potential sentence, it is no surprise that, as his counsel attests in a sworn affidavit, he "never made any claim of innocence" and "decided to plead guilty very early in the case . . . ." Doc. 24-4 at 1. Though Mr. Elliott received the maximum sentence permitted by his plea agreement, his sentence was far from "unmitigated," and, "[c]onsidering the benefits [he] received by pleading guilty and the lack of any indication that he likely would have succeeded at trial," I cannot find that proceeding to trial would have been objectively rational under the circumstances. *Collins*, 96 F. Supp. at 1257; *Heard*, 728 F.3d at 1183. I therefore recommend that the Court dismiss this claim with prejudice.

### D. A hearing is not necessary.

"Unless the motion and the files and records of the case conclusively show that [Mr. Elliott] is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and makes findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. Mr. Elliott convincingly shows that his sentence is not authorized by law and that his sentence should be corrected. However, a hearing is not necessary to correct Mr. Elliot's sentence as he requests. *See United States v. Hadden*, 475 F.3d 652 (4th Cir. 2007) ("The text of § 2255 clearly affords the district courts the authority to 'correct' a prisoner's unlawful sentence without conducting a formal 'resentenc[ing]' hearing."). In addition, the record conclusively shows that Mr. Elliott is not entitled to relief on his claim regarding restitution and his claim regarding his decision to plead guilty. Accordingly, I recommend the Court deny an evidentiary hearing on all Mr. Elliot's claims.

### E. Recommendation

The case records show that Mr. Elliott's current sentence is not authorized by law. *See* 28 U.S.C § 2255(b). I therefore recommend that the Court correct Mr. Elliot's sentence to reflect a

sentence of 270 months on each count, to be served consecutively. Mr. Elliott is not entitled to relief on his other claims, and I recommend that the Court dismiss those claims without holding an evidentiary hearing. *Id.* I recommend that the Court dismiss Mr. Elliott's restitution claim for lack of subject matter jurisdiction, and that it dismiss his ineffective assistance claim relating to his guilty plea with prejudice.

### F. Certificate of Appealability

Lastly, I address whether Mr. Elliott is entitled to a certificate of appealability on his latter claims. No appeal may be taken from a "final order in a proceeding under section 2255" unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue only if Mr. Elliott "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth above, Mr. Elliott has failed to make this showing once his sentence is corrected. I therefore recommend that the Court deny Mr. Elliott a certificate of appealability.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma,* 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id.*  In other words, if no objections are filed, no appellate review will be allowed.

_____
Laura Fashing
United States Magistrate Judge